## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 17-cv-62542-BLOOM/Valle

GIULIANO STEFANO GIOVANNI WILDHABER,

      Plaintiff,

v.

EFV, *et.al.*,

      Defendants.

_____/

### <u>OMNIBUS ORDER</u>

**THIS CAUSE** came before the Court upon the Bank Defendants' Omnibus Motion to Dismiss the Complaint, ECF No. [56] ("Bank Defendants' Motion to Dismiss"), UBS AG's Motion to Dismiss the Complaint, ECF No. [62] ("UBS's Motion to Dismiss"), EFV and EBK-Eidgenoessische Bankenkommission's ("FINMA") (collectively "the Swiss Confederation") Motion to Dismiss, ECF No. [77] ("Swiss Confederation's Motion to Dismiss"), Plaintiff's Motion to Dismiss the Appeal and Removal as Untimely, ECF No. [106] ("Plaintiff's Sur-reply"), and the Swiss Confederation's Motion to Strike Plaintiff's Motion to Dismiss the Appeal and Removal as Untimely, ECF No. [108] ("Motion to Strike"). For the reasons explained below, the Bank Defendants' Motion to Dismiss, UBS's Motion to Dismiss, the Swiss Confederation's Motion to Dismiss, and the Motion to Strike are granted.

### I.      BACKGROUND

Plaintiff, a *pro se* litigant, originally filed this lawsuit in the Seventeenth Judicial Circuit in and for Broward County, Florida. *See* ECF No. [1-1]. The Swiss Confederation removed the lawsuit to the Southern District of Florida based on federal question jurisdiction, ECF No [1],

  
and the Swiss Bank Defendants,[1] thereafter, filed their own Notice of Removal also on federal question grounds. *See* ECF No. [3]. The Swiss Bank Defendants then filed a Notice of Related Action, informing the Court that Plaintiff, through his corporation, originally filed a lawsuit raising the same claims and allegations against some of the same Defendants in *Human Rights Defenders, Inc. v. Swiss Confederation & Zürcher Kantonalbank,* Case No. 17-61212-CV-DIMITROULEAS. *See* ECF No. [4] ("the predecessor lawsuit"). In the predecessor lawsuit, Judge Dimitrouleas dismissed the claims without prejudice because the Plaintiff corporation was not represented by counsel. In this subsequent lawsuit, Plaintiff, as an individual, filed nearly identical claims.

Plaintiff's Complaint, while difficult to understand, raises claims arising from a series of actions that occurred in Switzerland in 1988 and 1989. Specifically, Plaintiff alleges that in 1988, a referendum was held in Switzerland involving a proposal to restrict land speculation, which 70% of the voters rejected. *See* ECF No. [1-1] at ¶¶ 6-7. Despite the referendum's failure, on October 6, 1989, the Swiss Federal Council adopted a decree that discouraged land speculation and imposed time restrictions on the sale of property. *Id.* at ¶ 8. Following the enactment of the decree, Plaintiff alleges that many individuals in Switzerland, including him, suffered economic harm. *Id.* at ¶ 15-16. According to Plaintiff, this was a violation of the Swiss Constitution and constituted a "cold expropriation." *Id.* at ¶¶ 23-24. Against this background, Plaintiff asserts five counts in his Complaint. Count I is labeled as a claim for general declaratory

---

[1] The Swiss Bank Defendants are: Aargauische Kantonalbank, Appenzeller Kantonalbank, Banca dello Stato del Cantone Ticino, Banque Cantonale de Genève, Banque Cantonale de Fribourg, Banque Cantonale du Jura, Banque Cantonale du Valais, Banque Cantonale Neuchâteloise, Banque Cantonale Vaudoise, Basellandschaftliche Kantonalbank, Basler Kantonalbank, Berner Kantonalbank AG, Credit Suisse AG, Glarner Kantonalbank, Graubündner Kantonalbank, Luzerner Kantonalbank AG, Obwaldner Kantonalbank, Nidwaldner Kantonalbank, Schwyzer Kantonalbank, St. Galler Kantonalbank AG, Thurgauer Kantonalbank, Urner Kantonalbank, Zuger Kantonalbank, and Zürcher Kantonalbank.

relief, but the label appears to be a misnomer as nowhere in the count or in the entire Complaint does Plaintiff request a declaration. *See generally id.* Instead, Count I seeks "money judgment for << compensatory damage >> of realy [sic] lost assets up 1989 726M$ = are more then a value of 1.5B$ today, adjusted for 27 years inflation + 5% interest p.a. up 12.08.2016." *Id.* at 11. Count II, in turn, is labeled as a claim for declaratory relief under the Alien Tort Statute while Count III alleges a violation of "International Obligations" under the Swiss Federal Constitution. *Id.* at 11-13. Count IV is not a claim for relief but is instead a demand for an award of attorney's fees under the "private attorney general doctrine." *Id.* at 13-14. And, finally, Count V raises a claim for breach of the Swiss Constitution. *Id.* at 14-15.[2] Although the Complaint is inartful as pled, Plaintiff has repeatedly taken the position that all of his claims in this action arise under the Alien Tort Statute. *See* ECF No. [99] at 6 ("ATS/ATCA (Alien Tort Claims Act): Then its also very important to understand, that I sue under ATS/ATCA."); ECF No. [99] at 7 ("I sue under ATS/ATCA for crimes that took place in Switzerland and where the Swiss law applies."); ECF No. [99] at 8 ("The defendants [sic] should also start to accept that I sue under ATS/ATCA . . . This allegations [sic] of violations oft he [sic] Swiss Constitution and international law can only be resolved in a U.S. Court. Because of the ATS/ATCA which provides exactly that.").

In response to the Complaint, Defendants filed three separate Motions to Dismiss. The Bank Defendants first filed their Motion to Dismiss seeking dismissal on the following grounds: (1) insufficient service of process under Federal Rule of Civil Procedure 12(b)(5); (2) lack of

---

[2] In addition, the Complaint contains numerous references to a class action. Several Defendants sought to dismiss the Complaint to the extent that Plaintiff, a *pro se* litigant, is seeking to impermissibly represent a class. *See* ECF No. [62] and [77]. In response to the Swiss Confederation's Motion to Dismiss, Plaintiff agreed to withdraw any claims relating to a class action. *See* ECF No. [99] at 5 ("**SO PLEASE DELETE THE EXPRESSION << CLASS >> if that disturbs the Court or the Defendants** . . . That's way [sic] the Plaintiff respectfully request to forgive him that and to cancel the expression CLASS") (emphasis in original).

personal jurisdiction under Rule 12(b)(2); (3) improper venue under the doctrine of *forum non conveniens*; (4) failure to state a claim under the Alien Tort Statute; and (5) expiration of the statute of limitations.  *See* ECF No. [56].  Plaintiff did not file a response to the Bank Defendants' Motion to Dismiss, so the Court entered an Order requiring one.  *See* ECF No. [81].  Plaintiff thereafter filed his Response.  *See* ECF No. [89].  UBS also filed a separate Motion to Dismiss, ECF No. [62], arguing that Plaintiff (1) fails to state a claim for relief because all conduct alleged is extraterritorial, which is not allowed under the Alien Tort Statute; (2) fails to state a claim under Rule 8(a) as Plaintiff has not placed UBS on notice of the claims against it; (3) fails to demonstrate personal jurisdiction over UBS; (4) fails to demonstrate sufficiency of service of process over UBS; (5) impermissibly represents a class despite being a *pro se* litigant; (6) failed to timely file his claims; and that (7) venue is improper under the forum *non conveniens* doctrine.  *See* ECF No. [62].  Although the Court ordered Plaintiff to file a response to UBS's Motion to Dismiss, ECF No. [81], Plaintiff failed to file one.

Finally, the Swiss Confederation filed its own Motion to Dismiss in which it seeks dismissal pursuant to the Foreign Sovereign Immunities Act, the Act of the State doctrine, and the statute of limitations.  *See* ECF No. [77].  The Motion to Dismiss contends that Plaintiff failed to state a claim, evaded a prior Court ruling, failed to effectuate sufficient service of process, and improperly filed class-action claims.  *Id.*  Plaintiff again failed to timely respond to the Swiss Confederation's Motion to Dismiss, which prompted the Court to require a response. *See* ECF No. [98].  Plaintiff thereafter filed his response and the Swiss Confederation timely filed its Reply.  *See* ECF Nos. [99] and [105].  Even though the Swiss Confederation's Motion to Dismiss was fully briefed, Plaintiff thereafter filed an authorized Sur-reply, which is the basis of

the Swiss Confederation's Motion to Strike addressed below. *See* ECF Nos. [106], [108], and [109].

Also during this timeframe, Defendants filed a Joint Motion to Stay the pre-trial proceedings while the Motions to Dismiss remained pending, which this Court granted. *See* ECF No. [73] and [107]. During the stay, the United States Supreme Court issued a new opinion interpreting the Alien Tort Statute, *Joseph Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018). For that reason, the Court required supplemental briefing addressing the impact, if any, of this new Supreme Court opinion on Plaintiff's claims. *See* ECF No. [110]. In his Supplemental Briefing, Plaintiff conceded that his claims against UBS and the Swiss Bank Defendants are barred and agreed to proceed solely against the Swiss Confederation. *See* ECF No. [112] at 3 ("**I already decided April 25, 2018 to strike the 26x corp.** (banks).") (emphasis in original); ECF No. [112] at 5 ("Nevertheless, I/we respectfully bow to this judgment **and I strike 26x defendants (corp.)** . . . This means that **2x remaining** defendants EFV & EBK Finma are still liable for damages") (emphasis in original). With this procedural history in mind, the Court proceeds to analyze the pending Motions to Dismiss and the Motion to Strike.

## II. LEGAL STANDARD

### a. Motion to Dismiss

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

### b. *Pro Se* Litigants

Courts must liberally construe all pleadings submitted by a *pro se* litigant. *See Jarzynka v. St. Thomas Univ. of Law,* 310 F. Supp 2d 1256, 1264 (S.D. Fla. 2004). Notwithstanding such leniency, courts cannot serve as *de facto* counsel for a party and cannot rewrite a deficient pleading for the sake of sustaining an action. *Id.* (quoting *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F. 3d 1359, 1369 (11th Cir. 1998)). That is, "[t]he Court cannot simply 'fill in the blanks' to infer a claim." *Grady v. Georgia Dep't of Correction*, No. CV409-103, 2010 WL 322881, at *2 (S.D. Ga. Jan. 27, 2010). In determining whether a *pro se* litigant has stated a claim, "the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations" while keeping in mind that "wildly implausible allegations in the complaint should not be taken to be true." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008).

### III. DISCUSSION

#### a. The Swiss Confederation's Motion to Strike

Before delving into the three Motions to Dismiss, the Court must first rule on the pending Motion to Strike filed by the Swiss Confederation to determine the universe of filings it must consider in its ruling. After the briefing on the three Motions to Dismiss was complete, the Court received an additional filing from the Plaintiff, which had a cover sheet titled "Motion to Dismiss the Appeal and Removal as Untimely." *See* ECF No. [106]. According to the Swiss Confederation, this filing is nothing more than an unauthorized Sur-reply to its Motion to Dismiss. *See* ECF No. [108]. The Court agrees.

The cover sheet appended to ECF No. [106] labels the filing as a "Motion to Dismiss the Appeal and Removal as Untimely." ECF No. [106] at 1. However, the title of the attached memorandum, "**Plaintiffs' Response to the Replay [sic] (DE-105)** but Motion to Dismiss the

7

EFV's and EBK-FINMA's Appeal and Removal as Untimely," and its content reveals that it is a Sur-reply. *See* ECF No. [106] at 3-16 (emphasis added). Indeed, the filing is a direct response to the arguments raised in the Swiss Confederation's Reply at ECF No. [105]. Plaintiff does not dispute the Swiss Confederation's characterization of his filing and does attempt to demonstrate otherwise. *See* ECF No. [109] at 6 ("Only because I / Self Represent Litigant (a businessman and not lawyer), made a technical mistake with an << additional memorandum>> ?! This request [referring to the Motion to Strike] is not proportional!"). Instead, Plaintiff argues two points. The first is that the Swiss Confederation missed the deadline to file its response to the Complaint and therefore "**all the entries of the EFV & EBK-FINMA are ZERO and VOID!** Even this Motion now to STRIKE my Motion << to Dismiss the Appeal and Removal al us [sic] UNTIMELY (ED-106) >>." ECF NO. [109] at 4 (emphasis in original). The second is that a pleading cannot be stricken under Florida Rule of Civil Procedure 1.150 unless it is deemed a sham, redundant, immaterial, or scandalous. *Id.* The Court will address each argument in turn.

Throughout his filings, including the briefing on the Motions to Dismiss, Plaintiff has repeatedly argued that many of the Defendants, including the Swiss Confederation, failed to timely respond to the Complaint and such a failure effectively caused a default final judgment to be entered against them. As a result of this purported failure, Plaintiff argues "You Snooze, You Lose" and cites to a Florida Supreme Court case, *Santiago v. Mauna Loa Investments, LLC*. *See, e.g.* ECF No. [109] at 4. However, Plaintiff's argument is incorrect. Assuming the Defendants were properly served[3], a procedural question the Court need not decide as further explained below, their response to the Complaint was timely. In its Notice of Removal, EFV states that it

---

[3] All of the Defendants, including the Swiss Confederation, contest the sufficiency of service of the Complaint, which would be a predicate to entry of a Clerk's Default and a subsequent Default Judgment. *See* ECF Nos. [56], [62], and [77].

received the Summons and Complaint in the mail on December 5, 2017, making its response originally due on December 26, 2017. The Notice of Removal also states that FINMA received the Summons and Complaint in the mail on November 29, 2017, making its response due on December 20, 2017.[4] However, on December 21, 2017, the Swiss Confederation removed the case to the Southern District of Florida. Federal Rule of Civil Procedure 81(c) provides that:

> A defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these periods:
>
>> (A) 21 days after receiving – through service or otherwise – a copy of the initial pleading stating the claim for relief;
>>
>> (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or
>>
>> (C) 7 days after the notice of removal is filed.

Fed. R. Civ. P. 81(c) (emphasis added). By virtue of the removal, all Defendants' responses to the Complaint were automatically extended to December 28, 2017 – seven days after the notice of removal was filed. In the Court's Order on Post-Removal Procedures, pursuant to 28 U.S.C. §1608(d), the Court ordered the Swiss Confederation to respond to the Complaint by February 5, 2018. *See* ECF No. [34]. The Swiss Confederation thereafter filed its response – a Motion to Dismiss – on January 31, 2018. *See* ECF No. [77]. Contrary to Plaintiff's arguments, the Swiss

---

[4] Although FINMA's response to the Complaint was due on December 20, 2017, assuming that service was proper, Plaintiff did not seek or obtain a Clerk's Default on December 21, 2017 prior to the removal of this action to the Southern District of Florida. *See* ECF No. [37]. Once this action was removed, the state circuit court no longer had jurisdiction over the case and Florida's Rules of Civil Procedure ceased to apply to this action. *See* 28 U.S.C. § 1446(d) ("Promptly after the filing of such notice of removal of a civil action the defendant or defendants . . . shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded."); Fed. R. Civ. P. 81(c) ("These rules [referring to Federal Rules of Civil Procedure] apply to a civil action after it is removed from a state court."). As a result of the removal, the Swiss Confederation's deadline to respond to the Complaint was automatically extended to December 28, 2017 under Rule 81(c).

Confederation's response to the Complaint was indeed timely. As such, Plaintiff's argument that the Swiss Confederation's filings are void is without merit.

Plaintiff next argues that his filing, ECF No. [106], should not be stricken because this pleading is not a sham, redundant, immaterial, or scandalous, citing to Florida Rule of Civil Procedure 1.150 and case law interpreting this rule. *See* ECF No. [109]. Upon removal of this action, however, the Florida Rules of Civil Procedure ceased to apply to this case and instead the Federal Rules of Civil Procedure along with the Local Rules of the Southern District of Florida began to apply. *See* Fed. R. Civ. P. 81(c). Local Rule 7.1(c) permits the moving party to file a memorandum of law in support of a motion, the opposing party to file a memorandum in opposition, and the moving party to file a reply memorandum. *See* L.R. S.D. Fla. 7.1(c). "No further or additional memoranda of law shall be filed without prior leave of Court." *Id.* Plaintiff did not seek leave of Court prior to filing his additional memorandum and his status as a *pro se* litigant is not an excuse for the failure to follow the rules of procedure.

At the outset of this litigation, the Court instructed Plaintiff to become familiar with and follow the Federal Rules of Civil Procedure as well as all Local Rules. *See* ECF No. [42] ("Plaintiff, a *pro se* litigant, shall comply with all Federal Rules of Civil Procedure and Local Rules for the Southern District of Florida."); ECF No. [69] ("Plaintiff is once again ordered to follow the Local Rules of the Southern District of Florida, available at http://www.flsd.uscourts.gov/wpcontent/uploads/2017/11/2017-Local-Rules.pdf, and the CM/ECF Administrative Procedures for the Southern District of Florida, available at http://www.flsd.uscourts.gov/wp-content/uploads/2017/12/17-12-01-Administrative-Procedures-TEMPFINAL1.pdf."). Throughout the course of this litigation, the Court reminded Plaintiff repeatedly of his duty to respond to motions as required by the Local Rules. *See* ECF No. [81],

[96], and [98]. Notwithstanding the foregoing, Plaintiff has consistently failed to familiarize himself with the Local Rules, including their express prohibition against filing a sur-reply without prior leave of Court. Even when the Swiss Confederation brought this issue to Plaintiff's attention in its meet-and-confer email, ECF No. [109] at 9-10, and in its Motion to Strike, ECF No. [108], he still failed to seek leave of Court and instead insisted that his filing was proper. Plaintiff's Sur-reply, ECF No. [106], is an improper and unauthorized filing. It, therefore, follows that the Swiss Confederation's Motion to Strike, ECF No. [108], is granted.

**b. The Motions to Dismiss**

Defendants raise multiple procedural grounds for dismissal, such as insufficiency of service of process, personal jurisdiction, and forum *non conveniens*, as well as multiple substantive grounds for dismissal, such as failure to state a claim as a matter of law and a statute of limitations time bar. Because the Court finds that Plaintiff cannot state a claim as a matter of law under the Alien Tort Statute, the Foreign Sovereign Immunities Act, and the applicable statute of limitations, which are dispositive of Plaintiff's claims, the Court need to decide the procedural issues.

i. Alien Tort Statute

Plaintiff's claims in this action arise under the Alien Tort Statute, 28 U.S.C. § 1350 (the "ATS"). Although the Complaint contains claims for violations of the Swiss Constitution and international law, Plaintiff states he is prosecuting these alleged violations under the ATS. *See* ECF No. [99] at 6 ("Then its also very important to understand, that I sue under ATS/ATCA."); ECF No. [99] at 7 ("I sue under ATS/ATCA for crimes that took place in Switzerland and where the Swiss law applies."); ECF No. [99] at 8 ("The defendants [sic] should also start to accept that I sue under ATS/ATCA . . . This allegations of violations oft he [sic] Swiss Constitution and

international law can only be resolved in a U.S. Court. Because of the ATS/ATCA which provides exactly that."). Therefore, the Court begins its analysis with the text of the ATS, which states: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. While the language of the ATS appears to be jurisdictional in nature, the Supreme Court has explained that this grant of jurisdiction is "best read as having been enacted on the understanding that the common law would provide a cause of action for [a] modest number of international law violations." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115 (2013) (quoting *Sosa v. Alvarez–Machain,* 542 U.S. 692, 724 (2004)) (alterations in original). For that reason, "federal courts may 'recognize private claims [for such violations] under federal common law.'" *Id.* (alterations in original).

The ATS has recently been the subject of two Supreme Court opinions that are particularly relevant to Plaintiff's claims. Starting with *Kiobel*, the Supreme Court was faced with the question of "whether a claim [under the ATS] may reach conduct occurring in the territory of a foreign sovereign." *Id.* When answering this question, the Supreme Court emphasized the need to exercise judicial caution when deciding which claims can be brought pursuant to the ATS given foreign policy concerns, including concerns about impinging upon the discretion afforded to the Legislative and Executive Branches when managing foreign affairs. *Id.* at 116 (quoting *Sosa*, 542 U.S. at 727). "These concerns, which are implicated in any case arising under the ATS, are all the more pressing when the question is whether a cause of action under the ATS reaches conduct within the territory of another sovereign." *Id.* at 117. The Supreme Court ultimately concluded that "the presumption against extraterritoriality applies to claims under the ATS, and [] nothing in the statute rebuts that presumption." *Id.* at 124 (finding

that the petitioner's claim, which sought relief under the ATS, "for violations of the law of nations occurring outside the United States [wa]s barred").

The outcome here is no different than in *Kiobel*. Plaintiff has repeatedly stated that his claims arise under the ATS for a violation of international and Swiss law that *took place in Switzerland*. *See* ECF No. [99] at 6 ("Then its also very important to understand, that I sue under ATS/ATCA. That meen's [sic] that a) all crime scenes was in Switzerland and b) that we are all one hundred percent CH-aliens[5] and c) stay all in Switzerland. The 1x Plaintiff and all the 28x Defendants."); ECF No. [99] at 7 ("I sue under ATS/ATCA for crimes that took place in Switzerland and where the Swiss law applies."). In fact, Plaintiff mistakenly argues that an action under the ATS requires *extraterritorial* acts committed by aliens. *See* ECF No. [99] at 8 ("The defendants [sic] should also start to accept that I sue under ATS/ATCA. So you can exactly just complain, when everything happened extraterritorial, what is an <<condition-sine-qua-non>>. It must happened exterritorial [sic] and also committed only by aliens (e.g. <<aliens tort claims act>>)."). However, the Supreme Court in *Kiobel* reached the opposite conclusion. While Plaintiff argues that the United States allows for the resolution of all claims alleging violations of Swiss Constitutional and international law, the Supreme Court has squarely rejected such an argument. *See Kiobel*, 569 U.S. at 123 ("Finally, there is no indication that the ATS was passed to make the United States a uniquely hospitable forum for the enforcement of international norms."). The extraterritorial nature of Plaintiff's claims under the ATS is reason alone to dismiss the claims with prejudice.

In addition, the Supreme Court recently issued another opinion, *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1394 (2018), in which it decided "whether the law of nations imposes

---

[5] Throughout the proceedings, Plaintiff has used the letters "CH" as a reference to Swiss nationals.

liability on corporations for human-rights violations committed by its employees" and "whether it has authority and discretion in an ATS suit to impose liability on a corporation without a specific direction from Congress to do so." Answering the second question in the negative, the Supreme Court held that "foreign corporations may not be defendants in suits brought under the ATS." *Id.* at 1407. Significantly, when the First Congress enacted the ATS, it "provided a federal remedy for a narrow category of international-law violations committed by *individuals.*" *Id.* (emphasis added). In his Supplemental Briefing, Plaintiff agreed that *Jesner* was dispositive of his claims against the corporate defendants, consisting of 26 Swiss banks, and agreed to strike his claims against them. *See* ECF No. [112] at 2 (**"That's way [sic] I agree to strike this 26x banks, respecting this brand new [sic] US-SC-Decision!"**) (emphasis in original); ECF No. [112] at 5 ("I/we respectfully bow to this judgment **and I strike 26x defendants (corp.)"**) (emphasis in original).

With that said, Plaintiff still contends that the Swiss Confederation is liable for damages under the ATS because he sued two Swiss administrations "that do not [do] business." *Id.* at 2. Adding to his argument, Plaintiff states that corporations are "only for pure business and only for make money" whereas administrations, such as the Swiss Confederation, "does not make classic business" and "refer[s] to public administration, the (**state**) business of public administration (**tax + control**) and policy (e.g. **indivduels** [sic]) as **determined by Gov. under the Law and the Rules of the Constitution**." *Id.* at 3 (emphasis in original). This argument does not address or distinguish *Jesner*'s conclusion that the ATS only provides "a federal remedy for a narrow category of international-law violations *committed by individuals*." 138 S. Ct. at 1407 (emphasis added). Plaintiff's argument proves fatal to his claims against the Swiss Confederation as he has admittedly sued two governmental entities - EFV and FINMA - for their alleged violations of

Swiss and international law but has not sued a single individual.  *See* ECF No. [1-1].  As such, Plaintiff cannot state a claim as a matter of law under the ATS against any of the Defendants, requiring the dismissal of his claims with prejudice.

ii.  Statute of Limitations

Even if Plaintiff could state a claim under the ATS, the Court agrees with Defendants that such claims were time barred long ago.  It is clear from the four corners of the  Complaint that Plaintiff's claims arose on October 6, 1989 – more than 28 years before he filed this lawsuit in state court.  Not only does Plaintiff repeatedly allege that his claims against Defendants arose in 1989, but he also emphasizes this point in his briefing.  *See* ECF No. [1-1] at ¶¶ 8, 10, 11, 13, 24; ECF No. [112] at 3 (stating that the Swiss Confederation "*should* finally take responsibility for these **1989-crimes** and pay") (emphasis in original); ECF No. [112] at 5 ("This 1989-economic disaster was as a whole the largest property crime ever committed in Switzerland . . .").

"Statutes of limitations serve important purposes in our legal system and should be strictly enforced in all but the most egregious of circumstances."  *Arce v. Garcia*, 434 F.3d 1254, 1265 (11th Cir. 2006).  The existence of ambient conflict in another country is insufficient to justify tolling lawsuits filed under the ATS in the United States.  *Id.*  Although the ATS does not contain a statute of limitations, the Eleventh Circuit applies the ten-year limitations period contained within the Torture Victim Protection Act to the ATS as both statutes share similar purposes, mechanisms, and locations within the United States Code.  *See Arce v. Garcia*, 400 F.3d 1340, 1345–46 (11th Cir. 2005), *vacated on other grounds by* 434 F.3d 1254 (11th Cir. 2006) ("In sum, the ATCA and the TVPA share the same ten-year statute of limitations."); *see also Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1153 (11th Cir. 2005) ("It is clear that '[t]he ATCA and the TVPA share the same ten-year statute of limitations.'").  Plaintiff was, therefore,

required to file his claims under the ATS no later than October 6, 1999. Despite the expiration of the limitation period, Plaintiff waited another 18 years to file his claims against Defendants. In response to the statute of limitations argument, Plaintiff states that the limitation period never expired under Swiss law. *See* ECF No. [99] at 7. Not only does Plaintiff not provide the Court with any citation or authority establishing the applicable limitations period under Swiss law, but Plaintiff also fails to explain why this Court should apply the Swiss limitations period to his ATS claims as opposed to the ATS's ten-year limitations period. This Court is bound to apply Eleventh Circuit precedent requiring the enforcement of statutes of limitation in all but the most egregious of circumstances. In this instance, Plaintiff does not seek to equitably toll the statute of limitations and does not otherwise set forth any facts that would warrant such equitable tolling. The four corners of the Complaint make clear that Plaintiff's claims under the ATS accrued in 1989, thereby barring his claims in this lawsuit as a matter of law.[6]

### iii. Foreign Sovereign Immunities Act

Alternatively, the Swiss Confederation seeks dismissal under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605. The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Comparelli v. Republica Bolivariana de Venezuela*, No. 16-16748, 2018 WL 2749717, at *2 (11th Cir. June 8, 2018) (quoting *Mezerhane v. Republica Bolivariana de Venezuela*, 785 F.3d 545, 548 (11th Cir. 2015)). The foreign state is immune from the United States' jurisdiction unless one of the FSIA statutory exceptions applies. *Id.* (quoting *Calzadilla v. Banco Latino Internacional*, 413 F.3d 1285, 1296 (11th Cir. 2005)).

---

[6] Although Defendants raise alternative time bar arguments under Florida's four-year statute of limitations and 12-year statute of repose, the applicable limitations period is the one established under the ATS as Plaintiff has sued Defendants under this federal statute, not under Florida law.

The FSIA is strictly jurisdictional; therefore, if none of the enumerated exceptions are invoked, the district court lacks subject-matter jurisdiction over the claims. *Id.*

In this case, the Swiss Confederation argues that none of the exceptions to the FSIA are applicable. *See* ECF No. [77] at 10-14. Plaintiff's Complaint does not invoke any of the jurisdictional exceptions and, in his Response to the Swiss Confederation's Motion to Dismiss, he does not advocate for the application of an exception. *See* ECF No. [99]. In fact, Plaintiff admits that "[t]he Swiss Confederation is immune from liability under the Foreign Sovereign Immunities = THAT'S ONE HUNDRED PERCENT RIGHT AND I ALSO AGREE ONE HUNDRED PERCENT WITH THIS STATEMENT." *Id.* at 4 (caps in original). Plaintiff instead argues that he never sued the Swiss Confederation, meaning Switzerland, and that he is seeking to hold the Swiss Confederation "**liable for any damage which is caused by its organs (e.g. 7x privat [sic] actors et. al.) in the exercise of official activities. In this case, the Federal Councils of 1989.**" ECF No. [99] at 4 (emphasis in original). He then argues that private actors as well as state actors, such as politicians, can be "liable for acts which normally require a connection to a <<state action >> in order <u>to fulfill the requirements of an ATCA action</u>." *Id.* at 5 (emphasis in original).

As the Swiss Confederation points out in its Reply, Plaintiff has not sued any individuals in this lawsuit, such as the politicians or private actors he references. *See* ECF No. [105]. Instead, he has sued two Swiss government agencies – EFV and FINMA. *See* ECF No. [1-1]. Plaintiff's Supplemental Briefing acknowledges that he sued two Swiss government agencies. *See* ECF No. [112] at 2 (stating that EFV and EBK-FINMA are "2x CH-administrations, that do not [do] business."); ECF No. [112] at 3 (explaining that administrations, such as EFV and FINMA "does not make classic business" and "refer[s] to public administration, the **(state)**

business of public administration (**tax + control**) and policy (e.g. **indivduels** [sic]) as **determined by <u>Gov.</u> under the <u>Law</u> and the <u>Rules</u> of the <u>Constitution</u>.") (emphasis added). Both the Complaint and Supplemental Briefing make clear that Plaintiff sued the Swiss government. Absent allegations invoking one of the enumerated exceptions of the FSIA, the Court lacks subject matter jurisdiction over Plaintiff's claims against the Swiss Confederation. Not only does the Complaint fail to invoke a single FSIA exception, but Plaintiff also concedes that the Swiss Confederation is immune from suit.[7] Accordingly, even if Plaintiff could state a claim against the Swiss Confederation under the ATS, this Court would still lack subject matter over such claims under the FSIA.

## IV.    CONCLUSION

For the reasons explained above, it is **ORDERED and ADJUDGED** as follows:

1. The Bank Defendants' Omnibus Motion to Dismiss the Complaint, **ECF No. [56]**, is **GRANTED.** Plaintiff's claims against the Bank Defendants are **DISMISSED WITH PREJUDICE**.

2. UBS AG's Motion to Dismiss the Complaint, **ECF No. [62]**, is **GRANTED.** Plaintiff's claims against UBS AG are **DISMISSED WITH PREJUDICE**.

3. EFV and EBK-Eidgenoessische Bankenkommission's Motion to Dismiss, **ECF No. [77]**, is **GRANTED.** Plaintiff's claims against EFV and EBK-Eidgenoessische Bankenkommission are **DISMISSED WITH PREJUDICE**.

4. Plaintiff's Motion to Dismiss the Appeal and Removal as Untimely, **ECF No. [106]**, is an authorized Sur-reply and is, therefore, **STRICKEN**.

---

[7] Because Plaintiff is in agreement that the Swiss Confederation is immune from suit under the FSIA, the Court need not review each exception to determine whether any of them apply to the facts alleged in the Complaint.

5. EFV and EBK-Eidgenoessische Bankenkommission's Motion to Strike Plaintiff's Motion to Dismiss the Appeal and Removal as Untimely, **ECF No. [108],** is **GRANTED.**

6. Pursuant to Federal Rule of Civil Procedure 58, the Court will enter final judgment by separate order.

7. To the extent not otherwise disposed of, all pending motions are **DENIED** as moot, and all pending deadlines are **VACATED**.

8. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of June, 2018.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Giuliano Stefano Giovanni Wildhaber, *pro se*